MARCH 11, 1986

No. A–691.   BASS *v.* McCOTTER, DIRECTOR, TEXAS DEPARTMENT OF CORRECTIONS.   Application for stay of execution of sentence of death scheduled for Wednesday, March 12, 1986, presented to JUSTICE WHITE, and by him referred to the Court, denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976), I would grant the application for a stay and a petition for certiorari, and vacate the death sentence in this case. However, even if I did not hold this view, I would grant this application.

The Court of Appeals rejected applicant's conflict-of-interest claim with regard to attorney Sanders based on the trial court's finding that Sanders had not acted as applicant's trial counsel.

784 F. 2d 658 (1986). However, because the determination whether Sanders acted as applicant's counsel presents a mixed question of fact and law, we are not obliged, as the Court of Appeals apparently believed, simply to defer to the trial court's finding. Cf. *Cuyler* v. *Sullivan*, 446 U. S. 335, 342 (1980) (state court's holding that lawyers had not engaged in multiple representation is mixed question of fact and law).

Sanders represented applicant when he contested extradition from Kentucky to Texas. Upon extradition, the trial court appointed Victor Blaine, a Texas attorney, to represent applicant. However, Sanders continued to play an active role in the case. First, Sanders appeared as *amicus curiae* in support of applicant's motion for a continuance to allow applicant to obtain substitute counsel. Sanders had apparently obtained an agreement from an outside organization to provide applicant with substitute counsel if a continuance could be secured. Second, when applicant balked at testifying at trial without first consulting Sanders, Sanders urged applicant to follow Blaine's advice and to take the stand in his defense. Third, Sanders and Blaine had frequent and direct communication in writing and by telephone, although the trial court characterized the bulk of these as "non-controversial." Fourth, after applicant complained to Sanders about his inability to communicate with Blaine, Sanders gave applicant advice on how to document his complaints with a view towards seeking Blaine's removal or a continuance to obtain new counsel. Fifth, Sanders appeared as *amicus curiae* and filed a motion for reconsideration of applicant's appeal of his conviction. Sixth, Sanders did represent applicant when he filed his petition for certiorari to this Court. Based on these facts, applicant raises a serious question as to whether Sanders was in fact his attorney for purposes of the Sixth Amendment right to effective assistance of counsel. While Sanders did not formally conduct applicant's trial, applicant relied on Sanders' advice in making critical decisions throughout the proceedings. If Sanders was acting as applicant's attorney, Sanders' alleged conflict of interest may have deprived applicant of the effective assistance of counsel under *Cuyler, supra*. I would therefore grant the application for a stay in order to provide applicant with time to prepare and file a petition for a writ of certiorari raising this issue.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976), I would grant the application for stay in order to give the applicant time to file a petition for writ of certiorari, and would grant the petition and vacate the death sentence in this case.